The opinion of the court was delivered by
McEnery, J.
The plaintiffs sue the defendants, as commercial partners, doing business in the name of the Traders’ Bank of Mansfield, for balance of a stated account. The plaintiffs did a large business with the bank, which was never legally organized, and as consequence of its failure to organize, the defendants are sought to be made liable as partners.
For the history of the organization of the bank and the reasons given for the liability of the subscribers to its stock as commercial partners, we refer to the case of Williams vs. Hewitt, 47 An. 1077.
The defence is that plaintiffs did business with the bank as an incorporated institution, and are estopped from disputing its legal existence and corporate capacity; that there existed a partnership between the bank and the plaintiffs, and, finally, the want of authority in the president of the bank to assume the indebtedness of a third party to plaintiffs, which assumption is the ground of plaintiffs’ action.
In the case of Williams vs. Hewitt, that part of the defence involving the question of estoppel was elaborately discussed, and we find nothing in this case to distinguish it from that one.
The evidence does not satisfy us that the plaintiffs were in any way interested in the bank further than the interest which springs from the anxiety as to its financial condition and its proper management, because of the extensive dealing plaintiffs had with the bank. The bank was plaintiffs’ agent in distributing money to the concerns for the supply of farmers, and the taking by these latter organizations crop liens, and procuring the shipment of cotton upon which advances had been made to plaintiffs.
There was a limited company known as Hewitt & Co. This company owed the plaintiffs. The bank assumed an indebtedness of this company to plaintiffs, amounting to fifty-five thousand seven hundred dollars and forty-seven cents, for which amount the bank gave *1216 a check to the firm of Hewitt & Oo., who forwarded the same to plaintiffs, who charged the bank with the amount. This occurred May 29, 1893. There was no opposition made to this transaction, and it seems to have been acquiesced in by the directors.
At this time the bank seems to have been solvent; at least, no action had been taken by the directors to close it. There seems to be no contention as to this assumpsit, but the contention is to the assumption of the balance of the account of Hewitt & Co., amounting to eight thousand and thirty-three dollars and thirty-three cents. Before the assumption of this balance of account, in consequence of the insolvency of the bank, the directors had ordered the bank closed. The president, J. E. Hewitt, who was also the manager of Hewitt & Co., disregarded the order and kept the bank open and assumed the debt. Plaintiffs approved of this disobedience of the order of the directors.
It is claimed by plaintiffs that the president, Hewitt, had authority to create debts against the bank. This authority is found in the bank’s charter, but its proper interpretation means that he shall “ contract debts, sign checks, and all other obligations,” only in the due and proper course of the legitimate transactions of the bank. It confers no power on him to assume a debt of a third party not connected with the banking business, and for which the bank received no consideration. Besides this, if the charter is to be taken as the measure of defendants’ liability, it must be taken in its entirety.
Another section of the charter says that the stockholders shall not be liable for loss or damage incurred by the corporation beyond the unpaid balance of the stock subscribed by them. The plaintiffs were consulted about the organization of the bank, and this charter was submitted to them and they approved of the same.
But, if we eliminate the charter as the articles of association, and consider defendants’ liability as commercial partners simply, we fail to find any authority that permits one partner to assume the debt of a third party and bind the partnership, without the consent of the other members of the association.
No authority was given to the president of the bank by vote of the stock subscribers to assume this debt. It was purely gratuitous on the part of the president. If this last item be eliminated from the account, the defendants owe the plaintiffs nothing. It is urged that *1217 the bank furnished the statement to the plaintiffs, and the balance sued for shows the amount due. But the bank had no authority to furnish such a statement with the item of eight thousand and thirty-three dollars and thirty-three cents, which the bank or the stock ■subscribers, who are sued as partners, did not owe.
There were five commissioners appointed to liquidate the affairs •of the bank. They intervened and sued for balance due the bank by plaintiffs, after striking off of the account the above item. The intervention was dismissed. Although called an intervention it was a distinct and separate suit against the plaintiffs, and could only •serve to complicate the issues between plaintiffs and defendants. The plaintiffs had the right to be sued at their domicile on this demand.
Judgment affirmed.